**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | |
|---|---|
| **BOBBY RAY ARMSTRONG,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 1:08-CV-045-C |
| § | ECF |
| § | |
| **MICHAEL J. ASTRUE,** § | |
| **Commissioner of Social Security,** § | |
| § | **Referred to the United States** |
| Defendant. § | **magistrate judge** |

**REPORT AND RECOMMENDATION**

**THIS CASE** is before the court upon Plaintiff's complaint filed May 6, 2008, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits under Title II of the Social Security Act. On May 6, 2008, the United States district judge, pursuant to 28 U.S.C. § 636(b), reassigned this case to the United States magistrate judge for all further proceedings. Plaintiff filed a brief in support of his complaint on October 18, 2008, Defendant filed a brief on November 17, 2008, and Plaintiff filed his reply on December 15, 2008. This court has considered the pleadings, the briefs, and the administrative record and recommends that the United States district judge reverse the Commissioner's decision and remand this case for further administrative proceedings.

**I.   STATEMENT OF THE CASE**

Plaintiff filed an application for disability insurance benefits on November 2, 2005, alleging disability beginning June 24, 1997. Tr. 16, 57-59. Plaintiff's application was denied initially and upon reconsideration. Tr. 16, 41-44, 46-50. Plaintiff filed a Request for Hearing by Administrative

Law Judge on April 20, 2006, and this case came for hearing before the Administrative Law Judge ("ALJ") on October 12, 2006. Tr. 16, 36-37, 187-234. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 193-207. Two witnesses, Plaintiff's son, Bobby Ray Armstrong, Jr., and Plaintiff's MHMR caseworker, Sheila Rose, also testified. Tr. 207-20. Dr. John Simonds, a medical expert ("ME"), and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 221-32. The ALJ issued a decision unfavorable to Plaintiff on April 19, 2007. Tr. 13-22.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements only through March 31, 1998. Therefore, Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. Tr. 16-17. Plaintiff had not engaged in substantial gainful activity at any time between June 24, 1997, and March 31, 1998. Tr. 17. Plaintiff has the "severe" impairment of depression. *Id*. Plaintiff did not have an impairment, singularly or in combination, that were severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ found that Plaintiff could not return to his past relevant work as an oilfield worker/supervisor or a ranch owner/worker. Tr. 21. He noted that Plaintiff was considered an "individual closely approaching advanced age" with a G.E.D. 20 C.F.R. §§ 416.963, 416.964; Tr. *Id*.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the full range of exertional work activity, limited to jobs with a reasoning development level of 1, 2, or 3 and with no more than incidental contact with the public and co-workers. Tr. 18-19.

Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 21-22. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of industrial cleaner, with 8,400 jobs in Texas and 264,000 jobs nationally; sandwich maker, with 5,900 jobs in Texas and 187,000 jobs nationally; and auto detailer, with 3,900 jobs in Texas and 158,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 22.

Plaintiff submitted a Request for Review of Hearing Decision/Order on April 27, 2007. Tr. 10-12. After granting a 25-day extension, the Appeals Council denied Plaintiff's request and issued its opinion on March 8, 2008, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 4-9. The ALJ's decision, therefore, became the final decision of the Commissioner.

On May 6, 2008, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence

"is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 21-22.

### III. DISCUSSION

Plaintiff claims that the ALJ's decision is not supported by substantial evidence because the ALJ failed to find that Plaintiff's severe mental impairment did meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1; failed to adequately assess Plaintiff's mental RFC; failed to adequately assess Plaintiff's credibility; and failed to adequately assess the credibility of Plaintiff's witnesses. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record

to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

In order to obtain a determination of disabled under the Listing of Impairments, an applicant must show that his impairments meet or equal one of the listings in Appendix 1 of 20 C.F.R. Part 404. The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings. At step 3 the burden of proof rests with a claimant. Ultimately, the claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff argues that he has met the criteria of § 12.04, Affective Disorders, and has shown presumptive disability. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1. In order to meet the listing for § 12.04 for Affective Disorders, the Plaintiff must show medically documented persistence of depressive syndrome[1] or manic syndrome[2] or bipolar syndrome,[3] which must result in two of the following:

---

[1] Depressive syndrome is characterized by at least four of the following: anhedonia or pervasive loss of interest in almost all activities; or appetite disturbance with change in weight; or sleep disturbance; or psychomotor agitation or retardation; or decreased energy; or feelings of guilt or worthlessness; or difficulty concentrating or thinking; or thoughts of suicide; or

marked restriction of the activities of daily living; or marked difficulty maintaining social functioning; or marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)-(B). Alternatively, the Plaintiff may demonstrate a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following: repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, and a continued need for such arrangement. *Id.* Section 12.00 defines episodes of decompensation as:

> exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing

---

hallucinations, or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 A(1)(a)-(I).

² Manic syndrome is characterized by at least three of the following: hyperactivity; or pressure of speech; or flight of ideas; or inflated self-esteem; or decreased need for sleep; or easy distractability; or involvement in activities that have a high probability of painful consequences which are not recognized; or hallucinations or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (A)(2)(a)-(h).

³ Bipolar syndrome is characterized with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes). 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 (A)(3).

>     household); or other relevant information in the record about the existence, severity,
>     and duration of the episode.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00 C(4). This section also defines repeated episodes of decompensation, each of extended duration, to mean "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id*. More frequent episodes of shorter duration or less frequent episodes of longer duration may be considered to substitute for the listed finding in a determination of equivalence. *Id*.

In evaluating mental disorders under the Listing of Impairments, the Commissioner first considers whether the claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.00. Upon such a determination, the Commissioner then considers the criteria set forth in paragraphs B and C, which describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. *Id*. The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description that is manifested by the medical findings. *Id*. The Commissioner will first consider the paragraph B criteria before the paragraph C criteria and will assess the paragraph C criteria only if it is found that the paragraph B criteria are not satisfied. *Id*. The claimant will be found to meet a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied, thereby establishing presumptive disability. 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 12.00.

The record indicates that Plaintiff was admitted to the Carl Albert Community Mental Health Center ("CACMHC") in McAlester, Oklahoma, on June 25, 1997, upon an emergency detention order. Plaintiff first argues that as of June 24, 1997, the alleged onset date, or, at the latest, as of March 31, 1998, he had met the criteria of Section 12.04A of the Listing of Impairments. He alleges the medical evidence of record indicates that he has experienced several of the symptoms described

in 12.04A(1); that his activities of daily living, social functioning, maintaining concentration, persistence, and pace were subject to marked limitations; and that he has experienced as least two (2) espisodes of decompensation of extended duration. Plaintiff also argues that the ALJ erred by failing to appropriately consider the limitations imposed by his mental impairments and in crafting his RFC determination to reflect such impairments and erred in making his credibility determinations.

In his opinion the ALJ noted that he has considered the impairments in the Listing of Impairments addressing mental disorders. Tr. 17. The ALJ noted that Dr. Simonds, the ME, testified that Plaintiff's mental impairments did not meet or equal the requirements of any listed impairment. Tr. 18. The ALJ noted that the state agency medical consultants ("SAMCs") had concluded that there was insufficient evidence to assess Plaintiff's mental impairments, if any, prior to the expiration of his insured status. Tr. 21. The ALJ also noted that the remainder of the medical evidence was dated September 2000 and thereafter, well after Plaintiff's last date of insured status. Tr. 18.

The record demonstrates that the ME and the SAMCs both indicated that there was not sufficient evidence in the record to state that Plaintiff's impairments or combination of impairments met or equaled in severity any section of the Listing of Impairments. Tr. 151, 154, 221.

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a; 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "B" criteria. A five-point scale is

used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 416.920a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)). The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 416.920a(e)(2). The PRTF represents one way in which such findings may be documented. 20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. Pt. 404, Subpt. P, app. 1, 12.00-12.09 and 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. *Boyd*, 239 F.3d at 705.

The ALJ found that Plaintiff experienced mild restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies in concentration, persistence, or pace; and had experienced one documented episode of decompensation of an extended duration. Tr. 21. The SAMCs indicated that there was insufficient evidence to evaluate the functional limitations imposed by Plaintiff's mental impairments. Tr. 161. The ME testified that based on Plaintiff's "original diagnosis" and given that there were "no statements about [Plaintiff's] progress or his lack of progress" with regard to his follow-up care, his only limitations would be related to concentration and socialization, with moderation limitations in each area "provided he took his medication." Tr. 221. The ME testified that limitations would include "simple work and minimal contact with public and co-workers." *Id.* The ME noted that prior to Plaintiff's

hospitalization in 1997, a physician indicated that Plaintiff had no prior psychiatric treatment and no prior visual and auditory hallucinations or depression.  Tr. 224.  The ME testified that considering the entire treatment record, and based on his experience in dealing with people with these types of mental impairments, and considering the medical evidence, but not the reports of other witnesses, the limitations of simple work and minimal contact with the public and co-workers were appropriate and Plaintiff could work within these restraints.  Tr. 227-29.

A transfer summary from Plaintiff's June 25, 1997, hospitalization at CACMHC indicates that Plaintiff did not know what his chief complaint was and that Plaintiff reported never having had hallucinations or significant depression in his life and no past psychiatric treatment.  Tr. 102.   It was noted that Plaintiff had "some trouble concentrating," with flat affect, and that he had in the past had suicidal thoughts.  Tr. 103.  However, it was noted that Plaintiff reported auditory hallucinations telling him to pull in front of a car and he pulled in front of a tractor trailer, leading to a motor vehicle accident and his emergency detention.  Tr. 104-05.  The record indicates that Plaintiff was discharged from outpatient treatment on February 13, 1998, due to noncompliance with treatment. Tr. 107.  It was noted that Plaintiff's condition was not known at the time of discharge.  *Id*.

Plaintiff's inpatient records indicate that MMPI testing was invalid and a specific diagnosis could not be attained at that time.  Tr. 114.  It was, however, noted that prognosis for insight-oriented therapy was poor as Plaintiff may not feel that counseling may improve his condition.  *Id*.

After Plaintiff's last date of insured status, he was admitted to North Texas State Hospital for treatment on September 4, 2000.  Tr. 124.  It was noted that Plaintiff had "no insight to his need for help."  Tr. 125.  Plaintiff's physician noted that Plaintiff had a history of noncompliance iwth medication and no insight into his medical illness, with a long history of psychiatric illness.  *Id.*  It was noted that Plaintiff reported hearing voices for years, had delusional thinking, was paranoid in character, was refusing to take medication, and had shown threatening behavior as he acted out on

a delusion. Tr. 126. Plaintiff later complied with prescribed medications, reported no auditory hallucinations, and was discharged on September 20, 2000. Tr. 127. Notes indicate reports of problems off and on for over 30 years and refusal of medications after Plaintiff's 1997 hospitalization. Tr. 135. Plaintiff's ex-wife apparently reported a history of violence by Plaintiff, talking to nonexistent people, and auditory hallucinations. Tr. 140. Plaintiff reported that he still hears voices, which began in 1986. Tr. 141. The interviewer noted that Plaintiff was in denial of his illness. *Id*.

Plaintiff testified at his hearing on October 12, 2006, that in the summer of 1997, prior to his motor vehicle accident, he was hearing voices from "some entity from the other side" perhaps himself telling him to "do this, do that, do this, do that." Tr. 197. Plaintiff testified that there were spirits including one called Jenny, another called Ace, and others who told him things to do. Tr. 198. Plaintiff testified that an entity called Satan Saberdine told Plaintiff "you're going to kill yourself," while Plaintiff's attorney was speaking with Sheila Rose, an MHMR case worker. *Id*. Plaintiff testified that before his accident, he heard an entity telling him to "wreck this truck," over and over, and he went up and under the back end of a semi. Tr. 199-200. Plaintiff testified that this was not a suicide attempt and that he did this in response to the voice in his head. Tr. 200. Plaintiff testified that he heard the voices five, 10 or 15 years prior to the accident and had heard them since that time. *Id*. Plaintiff testified that the voices continually tell him to hurt himself and that he has slapped himself in response to a voice telling him to do so, which blacked both eyes two or three times. Tr. 203-04.

Plaintiff's son testified that in the mid-1990s, Plaintiff was not doing well, stopped taking care of himself, wore dirty clothes, did not take care of his personal hygiene, and lost a lot of weight because he would just eat cold food from a can. Tr. 208-09. He testified that in 1995 or 1996, he attempted to take Plaintiff with him to church, but Plaintiff would not acknowledge the people there.

Tr. 210. He testified that Plaintiff got mad at him during this time period and took his automobile and came towards his car, forcing him (the son) to take his car into the grass to avoid a head-on collision. *Id*. He testified that Plaintiff got much worse through 2001. *Id*. Plaintiff's son testified that in the late 1990s, Plaintiff was difficult to talk to because he did not have clear thoughts. Tr. 211.

In this case the ALJ found that Plaintiff did not meet the requirements of any section of the Listing of Impairments. Although Plaintiff alleges that this finding is in error, Plaintiff bears the burden of proving that his impairment or combination of impairments meet or equal a listing. 20 C.F.R. § 404.1520(d); *Selders*, 914 F.2d at 619. This burden requires Plaintiff to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller,* 72 Fed.Appx. At 158; *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). Plaintiff has not met this burden at step 3, and the court finds that the ALJ's step 3 determination is supported by substantial evidence in the record.

However, the question remains: is the ALJ's opinion and RFC determination otherwise supported by substantial evidence? The record indicates that neither the SAMCs nor the ME found enough evidence in the record to indicate that Plaintiff met or equaled the requirements of any Listing. The record contains no medical evidence regarding Plaintiff's mental impairments prior to the 1997 hospitalization. However, the record contains medical history recitations of Plaintiff's condition as reported by Plaintiff and contains the noncontemporaneous reports by Plaintiff's caregivers and by Plaintiff's family members of a history of mental problems.

Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

> [C]onsider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . . Second, once an underlying physical or mental

> impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p. The record demonstrates that the ALJ found that Plaintiff's medically determinable severe impairments or combination of impairments included depression. Tr. 17.

The ALJ may consider various factors in assessing a claimant's credibility, including the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any palliative measures used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citation omitted)). The subjective testimony of Plaintiff must be weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if

supported by substantial record evidence. *Villa*, 895 F.2d at 1024 (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)).

In this case the ALJ found that Plaintiff's statements, and those of others, concerning the intensity persistence and limiting effects of his symptoms did "not support disability prior to March 31, 1998," his date last insured. Tr. 20. The ALJ incorrectly indicated that Plaintiff had a Global Assessment of Functioning ("GAF")[4] score of 55[5] on Axis V upon discharge from CACMHC. Plaintiff actually had a GAF score of 50[6]. The ALJ noted that Plaintiff was noncompliant with his treatment and medications and indicated that Plaintiff's "failure to follow up with treatment certainly suggests Mr. Armstrong did not think he was significantly limited." *Id.*

Clearly, a claimant's failure to follow prescribed treatment may be considered in making a credibility determination. *See* Soc. Sec. Ruling 96-7p (July 2, 1996) ("SSR 96-7p"); *see also, Villa v. Bowen,* 894 F.2d 1019, 1024 (5th Cir. 1990). A financial inability to comply with treatment should also be considered. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1997). The ALJ is the factfinder, and his evaluation of the credibility of subjective complaints is, therefore, entitled to judicial deference if supported by substantial evidence. *Hollis*, 837 F.2d at 1385; *Jones*, 829 F.2d at 527. However, in this case, in making his credibility determination, the ALJ did not discuss the

---

[4] The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32. This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id.*

[5] The DSM-IV defines a GAF of 51-60 as moderate symptoms (e.g., flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[6] A GAF of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 324.

degree to which Plaintiff's reports of his history of auditory hallucinations was consistent with the reports of Plaintiff's son and his ex-wife and was echoed in the psychological histories in the medical records of his later treatment. The ALJ's decision also relies heavily upon Plaintiff's noncompliance with medication in making his credibility determination. The evidence of record suggests that Plaintiff's noncompliance may have been related to his lack of insight regarding his mental impairment. Indeed, Plaintiff testified about the voices that speak to him and he still hears, some of the names associated with such voices, and his feeling that he did not know why he was hospitalized. The evidence of record suggests that Plaintiff's noncompliance was closely related to the nature of his mental impairment. The ALJ discounted the reports of Plaintiff's historical symptoms, as described by Plaintiff's son and ex-wife, by an MHMR staffer, and by Plaintiff's caretakers. In making his credibility determination, the ALJ did not adequately describe his basis for rejecting such evidence. Moreover, the ALJ relied heavily upon the opinion of the ME in formulating his RFC finding and in determining the limitations imposed by Plaintiff's mental impairments.

There must be evidence in the record to support the ALJ's RFC determination. The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed

by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

Plaintiff disagrees with the substance of the RFC finding regarding the limitations imposed by his mental impairments.

The ME testified that the limitations indicated in his opinion reflect Plaintiff's level of functioning when he was compliant with treatment. The evidence of record does not indicate any length of time, except when hospitalized, where Plaintiff was compliant with treatment during the relevant time period. The testimony of Plaintiff, Plaintiff's son, and Plaintiff's case worker all indicate a level of functioning that is inconsistent with the limitations described by the ME and incorporated into the RFC finding. The medical records, many of which postdate Plaintiff's date last insured, include historical information relative to the time when Plaintiff was insured which indicates a level of functioning that is not compatible with the testimony of the ME and the ALJ's decision. Given the failure of the ALJ to more fully explain his credibility determination and his reasons for rejecting the information in the record regarding the limitations imposed by Plaintiff's mental impairments during the relevant period when he was not compliant with prescribed treatment, it is clear that the RFC determination is not supported by substantial evidence in the record.

This court may not re-weigh the evidence. However, there is not substantial evidence in the record to support the ALJ's decision. The court, therefore, turns to the appropriate remedy.

Plaintiff indicates that he seeks a remand with direction for an immediate award of benefits. When the court finds that the ALJ's opinion is not supported by substantial evidence, the court may remand with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits. *See Ferguson v. Schweiker*, 641 F.2d 243, 250 n.8 (5th Cir. Unit A Mar. 1981) (citing *Johnson v. Harris,* 612 F.2d 993, 998 (5th Cir. 1980); *see also McQueen v. Apfel*, 168 F.3d 152, 156 (5th Cir. 1999). A court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see McQueen,* 168 F.3d at156. "'Good cause shown' . . . [may] include a finding that the Secretary's decision is unsupported by substantial evidence, combined with an inability to make a definitive ruling concerning a claimant's disability based on the record before the court." *Ferguson*, 641 F.2d at 250 n.8. In *Ferguson* the Fifth Circuit found that where the Secretary's findings were not supported by substantial evidence but that the record did not support a dispositive ruling for the claimant, the appropriate remedy was to remand for further proceedings. *Id*. Plaintiff argues that he is entitled to a remand with an award of immediate benefits because he has definitively shown that he has meet the criteria of Section 12.04 of the Listing of Impairments.

As noted above, Plaintiff has not meet his burden to show that he has satisfied each of the criteria of Section 12.04 of the Listing of Impairments during the relevant time period. A reversal with directions to award benefits is not proper. *See McQueen*, 168 F.3d at 156. The cumulative effect of the evidence in this case does not meet the very high burden of establishing "disability without any doubt." *See Poe v. Comm'r of Soc. Sec.*, 2003 U.S. Dist. LEXIS 21307, 22-23 (N.D. Tex. 2003). Since there is insufficient medical evidence in the record to make a determination of disability, a remand for further administrative action is the appropriate course.

Therefore, the court recommends that this case be remanded to the Commissioner for further administrative action. Such action may include, as deemed appropriate, further development of the medical record regarding the limitations imposed by Plaintiff's mental impairment, such as through a consultative psychiatric or psychological examination, further consideration of the RFC finding, and additional consideration of the factors described in SSR 96-7p in making the credibility determination.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States district judge reverse the Commissioner's decision and remand this case for further proceedings in accordance with this recommendation. Plaintiff having refused consent to having the United States magistrate judge conduct all further proceedings in this case, this case is **TRANSFERRED** back to the docket of the United States district judge

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

DATED this 2nd day of September, 2009.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**